Lawrence DIMMITT, III, Dimmitt Chevrolet, Plaintiffs–Counter-defendants–Appellees,

v.

CITY OF CLEARWATER, John D. Richter, individually and as Development Code Administrator, Defendants–Counterclaim Plaintiffs–Appellants,

Rita Garvy, Mayor, Ron H. Rabun, City Manager, Defendants–Counterclaim Plaintiffs.

No. 92–2060.

United States Court of Appeals, Eleventh Circuit.

March 23, 1993.

Rehearing Denied May 4, 1993.

M.A. Galbraith, Jr, City Atty., Clearwater, FL, for appellants.

Joshua Magidson, Susan W. Fox, MacFarlane, Ferguson, Allison & Kelly, Tampa, FL, for appellees.

Before HATCHETT, EDMONDSON and BIRCH, Circuit Judges.

BIRCH, Circuit Judge:

In this case, we must decide whether an ordinance adopted by the City of Clearwater, Florida ("the City") regulating the display of signs, flags, and other means of graphic communication violates the constitutional guarantee of free speech. Lawrence Dimmitt, III and Dimmitt Chevrolet, Inc. (collectively "Dimmitt") challenge the constitutionality of the Clearwater ordinance on face and as applied to prohibit the display of 23 American flags at the Dimmitt automobile dealership. Finding that the ordinance impermissibly restricted protected expression, the district court declared a portion of the Clearwater ordinance unconstitutional and enjoined the City from interfering with the flag display at the Dimmitt dealership. 782 F.Supp. 586. We AFFIRM the judgment of the district court on the ground that the Clearwater ordinance is an overbroad restriction of protected speech. Further, we hold that the City of Clearwater's counterclaim alleging violations of the United States Flag Code, 36 U.S.C. §§ 174–176, *et seq.* was properly dismissed.

## I.

In 1985, the City adopted a comprehensive land development code. One chapter consists of a sign code. Section 134.013(a) requires a permit before any sign is erected or altered. Within the meaning of the ordinance, a sign includes "[a]ny writing, picture, symbol, banner or other graphic communication or device which is primarily used to convey information, attract attention, or advertise and is prominently visible from an outdoor location." Clearwater Code of Ordinances, § 134.006. Section 134.008 exempts certain types of signs from the permit requirement.[1] In particular, section 134.008(18) exempts a limited number of flags:

> One flag may be placed on any residentially zoned property and up to two (2) flags may be placed on any nonresidentially zoned property without a permit. Such flags shall represent a governmental unit or body and shall be positioned so that no part of the flag is able to encroach over a public right-of-way.

Clearwater Code of Ordinances, § 134.008(18).

Dimmitt operates an automobile sales and service facility in the City of Clearwater. In December 1987, Dimmitt installed 23 American flags on the property, each affixed to the top of a light pole along the highway boundary of the dealership. After the City notified Dimmitt that the flag display exceeded the two flags that may be displayed on nonresidential property, Dimmitt requested a permit to fly the additional 21 flags. After this request was denied by John D. Richter, the City's Development Code Administrator, Dimmitt applied for a variance to allow the display. The variance request was heard and denied by the City's Development Code Adjustment Board. Upon receiving notice that 21 of the flags must be removed in order to avoid enforcement proceedings, Dimmitt initiated this action challenging the constitutionality of the Clearwater ordinance on its face and as applied to restrict the Dimmitt flag display.

---

1. In addition to the flags exemption at issue here, the ordinance exempts, with certain conditions and limitations, public signs posted by the government, temporary political signs, real estate signs, construction signs, temporary window advertisements, occupant identification signs, street address signs, warning signs, directional signs, memorial signs, signs commemorating public service, stadium signs, certain signs displayed on vehicles, signs commemorating holidays, menus posted outside restaurants, yard sale signs, and signs customarily attached to fixtures such as newspaper machines or public telephones. Clearwater Code of Ordinances, § 134.008(1–17).

## II.

### A.

■ The City contends that the Dimmitt flag display should not be treated as expressive conduct under the test of *Spence v. Washington*, 418 U.S. 405, 410–11, 94 S.Ct. 2727, 2730, 41 L.Ed.2d 842 (1974).[2] Further, the City argues that any expressive content of the flag display is merely commercial speech and should be treated under the less protective regime formulated in *Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 507, 101 S.Ct. 2882, 2892, 69 L.Ed.2d 800 (1981).[3] Dimmitt responds that the flag display is a protected act of political expression and that the City's asserted interests in aesthetics and traffic safety fail to justify the restrictions on free expression in the Clearwater ordinance.

■ We need not determine whether the Dimmitt display is itself expressive conduct or whether any expressive element should be classified as commercial or noncommercial. By its own terms, the Clearwater ordinance applies to virtually any form of graphic communication that is publicly displayed, and thus plainly reaches conduct that is both expressive and noncommercial.

Code of Ordinances, § 134.006. Since, as explained below, Dimmitt has standing to assert the rights of third parties whose noncommercial speech is restricted by the Clearwater ordinance, the ordinance must ultimately pass scrutiny under the more rigorous test applicable to noncommercial speech.

■ The City contends that its interests in promoting aesthetics and in minimizing visual distractions to motorists justify the restrictions upon graphic communication. We have upheld a number of content neutral regulations of signs and other advertising media based upon similar government interests.[4] The Clearwater ordinance, however, cannot be treated as a content neutral regulation. Section 134.008(18) exempts two flags displayed on nonresidential property from the permit requirement imposed in section 134.013(a). This exemption only applies, however, if the flags "represent a governmental unit or body." Thus, the display of the American flag or that of the State of Florida would be exempted from the permit process while a flag displaying the Greenpeace logo or a union affiliation would require a permit.

■ The City's interests in aesthetics and traffic safety cannot justify limiting

2. The Supreme Court has rejected "the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea." *United States v. O'Brien*, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). In order to determine whether conduct merits protection as speech, a court should inquire (1) whether "[a]n intent to convey a particularized message was present" and (2) whether "in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Spence v. Washington*, 418 U.S. at 410–11, 94 S.Ct. at 2730.

3. Commercial speech generally enjoys a more limited measure of protection and is subject to "modes of regulation that might be impermissible in the realm of noncommercial expression." *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456, 98 S.Ct. 1912, 1918, 56 L.Ed.2d 444 (1978). Regulation of commercial expression must be subjected to the four-part test summarized by a plurality of the Court in *Metromedia, Inc. v. City of San Diego*, 453 U.S. at 507, 101 S.Ct. at 2892:
 (1) The First Amendment protects commercial speech only if that speech concerns law-

ful activity and is not misleading. A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial government interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.

4. See, e.g., *Messer v. City of Douglasville*, 975 F.2d 1505, 1509–1511 (11th Cir.1992) (city's aesthetic interests in preserving historic district supported content neutral restriction upon off-site commercial and noncommercial signs); *Don's Porta Signs, Inc. v. City of Clearwater*, 829 F.2d 1051, 1053 (11th Cir.1987), *cert. denied*, 485 U.S. 981, 108 S.Ct. 1280, 99 L.Ed.2d 491 (1988) (regulation of portable signs directly advances city's legitimate interest in reducing visual clutter); *Harnish v. Manatee County*, 783 F.2d 1535, 1540 (11th Cir.1986) (upholding total ban on portable signs based upon aesthetics and traffic safety); *Supersign of Boca Raton, Inc. v. City of Fort Lauderdale*, 766 F.2d 1528, 1530 (11th Cir. 1985) (partial restriction of floating signs supported by interests in traffic safety and aesthetic improvement).

the permit exemption to government flags. The deleterious effect of graphic communication upon visual aesthetics and traffic safety, substantiated here only by meager evidence in the record, is not a compelling state interest of the sort required to justify content based regulation of noncommercial speech. *See Texas v. Johnson*, 491 U.S. 397, 412, 109 S.Ct. 2533, 2543–44, 105 L.Ed.2d 342 (1989) (where conduct is restricted *because of* the message expressed, the regulation must survive the most exacting scrutiny); *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983) (content based restriction on noncommercial speech must be "necessary to serve a compelling state interest"). Moreover, these asserted interests clearly are not served by the distinction between government and other types of flags; therefore, the regulation is not "narrowly drawn" to achieve its asserted end. *Perry Education Ass'n*, 460 U.S. at 45, 103 S.Ct. at 955. As a practical matter, only the most extraordinary circumstances will justify regulation of protected expression based upon its content. *See, e.g., Brandenburg v. Ohio*, 395 U.S. 444, 446–48, 89 S.Ct. 1827, 1829–30, 23 L.Ed.2d 430 (1969) (government may not proscribe advocacy of violence "except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action"). *Cf. New York Times Co. v. United States*, 403 U.S. 713, 718–20, 91 S.Ct. 2140, 2143–44, 29 L.Ed.2d 822 (1971) (asserted government interests insufficient to justify prior restraint on publication of classified study regarding American policy-making during Vietnam War).

In *Solomon v. City of Gainesville*, 763 F.2d 1212, 1214 (11th Cir.1985) (per curiam), we held that an ordinance restricting any graphic communication of an "obscene, indecent or immoral nature" was unconstitutionally overbroad. Although the statute purported to implement the municipality's interests in safety and aesthetics, the statute could not constitutionally advance those interests by prohibiting only those signs considered to be of questionable moral content. *See also Boos v. Barry*, 485 U.S. 312, 321–29, 108 S.Ct. 1157, 1164–68, 99 L.Ed.2d 333 (1988) (statute prohibiting display of signs within 500 feet of foreign embassy if sign is critical of a foreign government was unconstitutional content-based regulation). In *National Advertising Co. v. City of Orange*, 861 F.2d 246, 248–49 (9th Cir.1988), the Ninth Circuit invalidated a municipal ordinance regulating billboards on the ground that the exemptions from the ordinance were not content neutral. One of the provisions exempted "[f]lags of the national or state government; or not more than three flags of nonprofit religious, charitable or fraternal organizations." 861 F.2d at 248 (quoting Orange Municipal Code § 17.78.050). *Solomon* and *National Advertising* illustrate that a municipality may not accomplish its purposes in promoting aesthetics and traffic safety by restricting speech depending upon the message expressed. We conclude that by limiting the permit exemption to government flags, the City has unconstitutionally differentiated between speech based upon its content.

### B.

■ The City asserts that because Dimmitt displayed a government flag, Dimmitt lacks standing to attack the Clearwater ordinance on the ground that the ordinance places greater restrictions upon flags which do not represent a government body. Admittedly, the Dimmitt display violates the Clearwater ordinance because of the *number*, and not the type, of flags displayed. As explained below, however, the effect of the overbreadth doctrine is to allow Dimmitt to attack the Clearwater ordinance on face by alleging that the ordinance regulates content by limiting the exemption to government flags.

■ Ordinarily a litigant offering a facial constitutional challenge to a statute must establish that "no set of circumstances exist under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 2100, 95 L.Ed.2d 697 (1987). A litigant thus generally lacks standing to challenge a statute on the ground that it might be unconstitutionally

applied to restrict the conduct of parties not before the court.

■ In the context of the First Amendment, the Supreme Court has fashioned a special rule of standing known as "overbreadth." The Court has recognized that a statute that regulates a broad category of speech may deter expression that is protected by the First Amendment even if the statute has some range of constitutional application. The effect of the overbreadth doctrine is "to enable persons who are themselves unharmed by the defect in a statute nevertheless to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Board of Trustees v. Fox,* 492 U.S. 469, 484, 109 S.Ct. 3028, 3037, 106 L.Ed.2d 388 (1989) (quoting *Broadrick v. Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973)).

■ Although the Dimmitt flag display arguably is commercial speech, Dimmitt has standing to assert the First Amendment rights of those whose *non*commercial speech is restricted by the ordinance. The overbreadth doctrine does not apply where the *entire* scope of the statute restricts only commercial speech. *Village of Hoffman Estates v. The Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 496–97, 102 S.Ct. 1186, 1192, 71 L.Ed.2d 362 (1982). Where the statute governs both commercial and noncommercial speech, however, a litigant with a commercial speech interest may nonetheless qualify by virtue of the overbreadth rule to assert the speech rights of third parties with noncommercial speech interests. *Board of Trustees,* 492 U.S. at 481–82, 109 S.Ct. at 3035; *Metromedia, Inc. v. City of San Diego,* 453 U.S. at 504 n. 11, 101 S.Ct. at 2891 n. 11. This court has allowed a litigant challenging a restriction upon publicly displayed advertising media to invoke the overbreadth rule. *National Advertising Co. v. City of Fort Lauderdale,* 934 F.2d 283, 285

(11th Cir.1991); *Solomon v. City of Gainesville,* 763 F.2d at 1215.

■ Where, as is the case here, the statute in question regulates both speech and conduct, "the overbreadth ... must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S.Ct. 2908, 2918, 37 L.Ed.2d 830 (1973). Section 134.-008(18) impermissibly distinguishes government flags from other flags; it operates unconstitutionally both in exempting government flags and in denying such an exemption to other flags. The overbreadth is thus substantial in relation to the statute's plainly legitimate sweep, if there is in fact *any* legitimate sweep to section 134.-008(18). Dimmitt therefore may attack the Clearwater ordinance upon the ground that it impermissibly restricts speech based upon its content, even though the statute has been applied to Dimmitt in a content neutral fashion.

## C.

■ The City contends that the requirement that a flag represent a government body is not enforced and urges us to ignore this language in § 134.008(18). The mere fact that the City has not enforced the requirement that an exempted flag must represent a government body is not sufficient to remove this language from our consideration. Persons who wish to display nongovernmental flags may well be deterred from such activity by the clear terms of the Clearwater ordinance regardless of the lack of prior enforcement efforts. We are not even presented with any declaration by the City that this clause is not enforced as a matter of policy.[5] Moreover, the testimony of John Richter, the City's Development Code Administrator, suggests that the permit requirement of the Clearwater ordinance is administered based in part upon the type and content of

---

5. By analogy, this court has held that even where a statute is amended during the course of litigation, the case may not be rendered moot where there is some risk that the offending language may be reenacted. *National Advertising,* 934 F.2d at 286. Here the language in question has not been altered by the City.

the flag display in question, including its patriotic effect.

■ A facial challenge may be defeated if the statute in question is readily susceptible to a narrowed construction that is constitutional. *See, e.g., American Booksellers v. Webb,* 919 F.2d 1493, 1500 (11th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 2237, 114 L.Ed.2d 479 (1991). Similarly, we will uphold a facially overbroad or vague state statute if the statute has been limited by the courts of that state to a range of conduct that may be constitutionally restricted. *Id.* This court will not, however, rewrite the clear terms of a statute in order to reject a facial challenge. As we stated in *American Booksellers,* "we must consider the allegations of the potential range of materials covered by the statute ... in light of our twin obligations to (1) construe the statute narrowly, (2) without rewriting its terms." *Id.* Moreover, as a federal court, we must be particularly reluctant to rewrite the terms of a *state* statute.[6] There is no published decision of the Florida courts that limits the Clearwater ordinance by striking down the requirement that exempted flags must represent a government. The City has not suggested that we limit the district court's decision by invalidating only the portion of section 134.008(18) that limits the exemption to government flags. Moreover, to remove a portion of the permit exemption leaving the remainder of the subsection intact, in the guise of narrowly construing the Clearwater ordinance, would amount to the interference with the state legislative process that we eschewed in *American Booksellers.* The task of drafting a constitutionally permissible flag exemption must be left to the City.

To summarize, by exempting only government flags from the permit requirement, section 134.008(18) clearly restricts

speech based upon its content. Through the overbreadth doctrine, Dimmitt may attack the constitutionality of the Clearwater ordinance upon this ground. We need not decide whether the Dimmitt flag display qualifies as expressive conduct or whether any expressive content should be treated as commercial or noncommercial speech. Because of the content-based exemption, the Clearwater ordinance is not narrowly drawn to serve a compelling government interest and thus cannot withstand the scrutiny applicable to a content specific regulation. The district court therefore properly held the Clearwater ordinance unconstitutional.

The order of the district court invalidated only section 134.008(18). Section 134.008(18) contains only the exemption for a limited number of flags. Taken literally, by removing the portion of the Clearwater ordinance that exempts even two of Dimmitt's 23 flags, the order leaves Dimmitt in a worse position than if the City had prevailed. The order reflects the fact that the parties treat section 134.008(18), which is clearly only an exemption, as if this section itself prohibited any flags in excess of the exempted number. In order to implement the reasoning of the district court, upheld by this court, section 134.013(a), which requires a permit for any sign or flag, must also be declared unconstitutional as it exists in this statutory framework. We do not suggest, of course, that, if accompanied by proper and content neutral exemptions, a general permit requirement of the sort contained in section 134.013(a) would be unconstitutional.

### III.

Count I of the City's counterclaim seeks a declaration that the Dimmitt flag display violates the United States Flag Code, 36 U.S.C. §§ 174–76. The district court dis-

---

**6.** *See, e.g., Gooding v. Wilson,* 405 U.S. 518, 520, 92 S.Ct. 1103, 1105, 31 L.Ed.2d 408 (1972) (in absence of decision by state court limiting scope of statute, federal court lacked authority to narrowly construe statute and avoid facial constitutional challenge); *Welsh v. United States,* 398 U.S. 333, 363 n. 15, 90 S.Ct. 1792, 1808 n. 15, 26 L.Ed.2d 308 (1970) (Harlan, J., concurring) (a

federal court has "more limited discretion ... to extend a policy for the States even as a constitutional remedy"). *Cf. Boos,* 485 U.S. at 330, 108 S.Ct. at 1168 (statute regulating protests was enacted by Congress and not District of Columbia council and thus did not fall within rule limiting federal court's ability to narrow state legislation by construction).

missed this claim on the ground that the Flag Code is merely advisory and does not proscribe behavior. The City originally contended that the Dimmitt display violated the Flag Code by flying the American flag in darkness and during inclement weather. On appeal, the City limits its claim to the allegation that Dimmitt is violating the Flag Code by using the American flag for advertising purposes.

 A brief review of the display provisions of the Flag Code indicates that the statute was not intended to proscribe conduct. The Flag Code codifies various existing rules and customs pertaining to the display of the American flag "for the use of such civilians or civilian groups or organizations as may not be required to conform with regulations promulgated by one or more executive departments of the Government of the United States." 36 U.S.C. § 173. The operative provisions of the statute consistently use the term "should," and not "shall," when describing the proper manner for display of the flag. *See* 36 U.S.C. §§ 174–76. Moreover, Congress attached no penalty provisions for noncompliance with the display provisions in sections 174–76. By contrast, section 181 explicitly provides for a punitive fine to be levied upon persons manufacturing service flag or lapel buttons without a license. 36 U.S.C. § 181. Finally, even if the Flag Code were intended to proscribe behavior, the City has made no attempt under *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975) to show that the Flag Code contains an implicit right of action upon which the City may found its counterclaim.[7] The district court therefore properly dismissed Count I of the City's counterclaim. *See Holmes v. Wallace*, 407 F.Supp.

493, 495 (M.D.Ala.), *aff'd without published opinion*, 540 F.2d 1083 (5th Cir.1976) (NAACP had no remedy under 36 U.S.C. § 175(c) against display of the Confederate flag at a higher elevation than the American flag).[8] We therefore do not reach the issue of whether the First Amendment prohibits Congress from restricting the manner in which the American flag may be displayed for the purpose of maintaining respect for our national symbol.

## IV.

We must invalidate the Clearwater sign ordinance as facially unconstitutional. By exempting only government flags from the permit requirement, the City has unconstitutionally restricted expressive conduct based upon content. By virtue of the overbreadth doctrine, Dimmitt has standing to attack this aspect of the Clearwater ordinance. The district court thus correctly declared the sign ordinance unconstitutional. Additionally, the district court properly dismissed the City's counterclaim alleging violations of the United States Flag Code on the ground that the Flag Code is merely advisory and is not intended to proscribe behavior.

AFFIRMED and MODIFIED.[9]

7. In determining whether a private remedy is implicitly created by a statute, a federal court should inquire (1) whether the statute was created for the plaintiff's special benefit, (2) whether there is any indication of legislative intent to create a private remedy, (3) whether a private remedy would be consistent with the legislative purpose, and (4) whether the area is so traditionally relegated to the states that it would be inappropriate to infer a cause of action based solely upon federal law. *Cort*, 422 U.S. at 78, 95 S.Ct. at 2088.

8. In *N.A.A.C.P. v. Hunt*, 891 F.2d 1555 (11th Cir.1990), this court held, on *res judicata* grounds, that the judgment in *Holmes* precluded relitigation of the NAACP's Flag Code claim.

9. We modify the district court's judgment by holding that section 134.013(a), as it exists in this statutory framework, is also unconstitutional.