THE VILLAGE OF SCHAUMBURG, Plaintiff-Appellant, v. JEEP EAGLE SALES CORPORATION, d/b/a Jeep Eagle of Schaumburg, Defendant-Appellee.

First District (2nd Division) No. 1—95—0608

Opinion filed November 26, 1996.

482

Jack M. Siegel, of Altheimer & Gray, of Chicago, for appellant.

John B. Murphey, of Rosenthal, Murphey, Coblentz & Janega, of Chicago, for appellee.

JUSTICE DiVITO delivered the opinion of the court:

Defendant Jeep Eagle Sales Corporation, d/b/a Jeep Eagle of Schaumburg, displayed 13 American flags on two buildings on its lot in Schaumburg, Illinois. Plaintiff Village of Schaumburg (Schaumburg) brought this action, a quasi-criminal complaint, against defendant, alleging violations of its sign ordinance (Village of Schaumburg, Ill., Municipal Code title XV, § 155 (1993)) (the sign ordinance). At issue in this appeal is whether the circuit court erred in determining that certain provisions of the sign ordinance violated the first amendment to the United States Constitution. For the reasons that follow, we affirm.

Defendant is a car dealership located on Golf Road in Schaumburg, Illinois. It has two buildings on its lot, a main showroom for new cars and a smaller, used car salesroom. In September 1993, defendant hung eight American flags from the roof of its main showroom and five flags from the roof of its used car building. The four- by six-foot flags were attached to flag poles that extended approximately nine feet above the roof.

In October 1993, Schaumburg filed this action, seeking fines and an injunction prohibiting defendant from hanging the flags. Schaumburg alleged that defendant exceeded the maximum length and number of flag poles and the maximum number of flags permitted under the sign ordinance.

Pursuant to section 2—619(a)(9) of the Illinois Civil Practice Law (735 ILCS 5/2—619(a)(9) (West 1992)), defendant moved to dismiss the complaint on the grounds that portions of the sign ordinance were unconstitutional. Although defendant admitted to violating the provisions of the sign ordinance restricting the number of allowable flags, it claimed that the ordinance, in addition to the violated provisions, contained an overbroad, content-based restriction on free speech and expression in violation of the first amendment. The circuit court held that certain provisions of the sign ordinance were unconstitutional and granted the motion to dismiss. Schaumburg appeals.

I

■ Schaumburg asserts that the circuit court erred in finding that the sign ordinance was unconstitutional. Construction of an ordinance is a question of law, which is subject to *de novo* review. *Village of South Elgin v. City of Elgin*, 203 Ill. App. 3d 364, 367, 561 N.E.2d 295 (1990).

Defendant was charged with violating sections 155.11.02(4)(A)(2) and 155.11.03(5)(A)(2) of the sign ordinance. Village of Schaumburg, Ill., Municipal Code title XV, §§ 155.11.02(4)(A)(2), 155.11.03(5)(A)(2)

(1993). Those sections, which apply to "commercial uses" and "automobile dealerships," respectively, identically provided in relevant part:

> "*Corporate and Official Flags.* The display of corporate flags and official flags of any nation, state or political subdivision shall be permitted subject to the following:
> \*\*\*
> 2). There shall be a maximum of three (3) flag poles per zoning lot." Village of Schaumburg, Ill., Municipal Code title XV, §§ 155.11.02(4)(A)(2), 155.11.03(5)(A)(2) (1993).

Official flags are defined as the "official flags of any nation, state or political subdivision." Village of Schaumburg, Ill., Municipal Code title XV, § 155.11.01(4)(A) (1993).

The sections that defendant contends are unconstitutional, sections 155.11.02(4)(B) and 155.11.03(5)(B), likewise apply to "commercial uses" and "automobile dealerships," respectively. They provided:

> "The display of any flag other than a corporate or official flag shall be considered a banner, and such signs are prohibited in accordance with Article VI—Prohibited Signs, Section 2—Banners and Pennants." Village of Schaumburg, Ill., Municipal Code title XV, §§ 155.11.02(4)(B), 155.11.03(5)(B) (1993).

Schaumburg first contends that because defendant did not violate sections 155.11.02(4)(B) and 155.11.03(5)(B), it lacks standing to challenge them as unconstitutional. Although defendant concedes that it did not display a flag other than a corporate or official flag in violation of the sign ordinance, it contends that it nevertheless has standing to assert its claim under the doctrine of overbreadth.

■ The general rule of standing is that a litigant has standing to vindicate only its own constitutional rights. *Members of the City Council v. Taxpayers for Vincent,* 466 U.S. 789, 796, 80 L. Ed. 2d 772, 781, 104 S. Ct. 2118, 2124 (1984). Where the very existence of a broadly written statute may have a deterrent effect on free expression, however, the statute is subject to challenge by a party whose conduct may be unprotected. *Taxpayers for Vincent,* 466 U.S. at 798, 80 L. Ed. 2d at 782, 104 S. Ct. at 2125.

■ Here, as discussed below, sections 155.11.02(4)(B) and 155.11.03(5)(B) impermissibly distinguish corporate and official flags from all other flags. Because the sign ordinance attaches sanctions to the display of certain flags, the likelihood that such displays will be deterred is great. See *Taxpayers for Vincent,* 466 U.S. at 800 n.19, 80 L. Ed. 2d at 783 n.19, 104 S. Ct. at 2126 n.19. Defendant therefore has standing to challenge sections 155.11.02(4)(B) and 155.11.03(5)(B) as

violative of the first amendment, notwithstanding that those provisions were not applied to him. Accord *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1571 (11th Cir. 1993).

■ Our multi-layered inquiry next requires that we determine the type of protected conduct or expression, if any, the sign ordinance regulates. Schaumburg asserts that because defendant is using the flag display strictly for commercial purposes, it is not conveying the type of expressive message protected by the first amendment. Although the parties disagree as to whether *defendant's* conduct was protected by the first amendment, we need not make that determination. Where, as here, a defendant makes a facial challenge to a statute on overbreadth grounds, the relevant question is broader— whether "the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 37 L. Ed. 2d 830, 840, 93 S. Ct. 2908, 2916 (1973).

In urging that we assume that the sign ordinance plainly reaches noncommercial expression, defendant relies heavily on *Dimmitt v. City of Clearwater*, 985 F.2d 1565, 1571 (11th Cir. 1993). In that case, the court held unconstitutional a sign ordinance adopted by the City of Clearwater, Florida, that required a permit to erect a sign, which was defined as "any writing, picture, symbol [or] banner *** used to convey information." *Dimmitt*, 985 F.2d at 1568. Exempted from the permit requirement were flags representing a governmental unit or body, one per residence, two per nonresidential property. *Dimmitt*, 985 F.2d at 1568. The court found that because the Clearwater ordinance applied to virtually any form of graphic communication that was publicly displayed, it plainly reached noncommercial expression. *Dimmitt*, 985 F.2d at 1569.

Here, as in *Dimmitt*, the sign ordinance reaches not only expressive conduct, such as flying an American flag, but also pure expression, such as the display of a flag containing a written message. Thus, the sign ordinance must be justified under one of the tests applicable to expression.

■ Because the sign ordinance does not apply to residential property, we turn to the question of whether it regulates noncommercial or commercial expression. If the expression regulated by the sign ordinance is solely commercial in nature, analysis under the less stringent review outlined in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 65 L. Ed. 2d 341, 100 S. Ct. 2343 (1980), would be proper. Under that test, the government must show that it has a substantial interest, the regulation directly advances that interest, and the regulation is not more extensive than neces-

sary to serve that interest. *Central Hudson*, 447 U.S. at 566, 65 L. Ed. 2d at 351, 100 S. Ct. at 2351.

■ Commercial speech is speech that proposes a commercial transaction. *Board of Trustees of the State University v. Fox*, 492 U.S. 469, 482, 106 L. Ed. 2d 388, 405, 109 S. Ct. 3028, 3036 (1989). It is expression related solely to the economic interests of the speaker. *Central Hudson*, 447 U.S. at 561, 65 L. Ed. 2d at 348, 100 S. Ct. at 2349. It cannot be said that every flag flown by a commercial entity necessarily proposes a commercial transaction or is related solely to its economic interests. Thus, the sign ordinance must be deemed to reach noncommercial expression.[1]

---

[1]We note that even assuming, *arguendo*, that the sign ordinance reaches only commercial speech, it may nevertheless be subject to a more stringent form of scrutiny. The commercial speech decisions of the United States Supreme Court historically have addressed total bans on certain forms of advertising. *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 48 L. Ed. 2d 346, 96 S. Ct. 1817 (1976) (ban on advertising by pharmacists); *Central Hudson*, 447 U.S. at 558, 65 L. Ed. 2d at 346, 100 S. Ct. at 2347 (ban on promotional advertising by electrical utilities); *Fox*, 492 U.S. at 471-72, 106 L. Ed. 2d at 398, 109 S. Ct. at 3030 (ban on operation of most commercial enterprises on state university campuses). Those cases recognized that although the state may have an interest in preventing the dissemination of inaccurate or misleading material, the free flow of commercial information is indispensable. *Virginia State Board of Pharmacy*, 425 U.S. at 765, 48 L. Ed. 2d at 360, 96 S. Ct. at 1827.

The Supreme Court has recently suggested in *dicta* that the more lenient *Central Hudson* standard may be inapplicable to certain types of regulations on commercial speech. *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416 n.11, 123 L. Ed. 2d 99, 108 n.11, 113 S. Ct. 1505, 1510 n.11 (1993). In *Discovery Network*, the Court suggested that regulations such as the one at issue there—a selective ban on certain sidewalk newsracks—might be entitled to evaluation under the standards for fully protected first amendment speech. *Discovery Network*, 507 U.S. at 416 n.11, 123 L. Ed. 2d at 108 n.11, 113 S. Ct. at 1510 n.11. In his concurrence, Justice Blackmun also indicated that a regulation that suppresses truthful commercial speech should be subject to the same scrutiny applicable to noncommercial speech. *Discovery Network*, 507 U.S. at 431, 123 L. Ed. 2d at 117, 113 S. Ct. at 1517-18 (Blackmun, J., concurring). Because the majority concluded that the ban could not withstand scrutiny under *Central Hudson*, it did not determine whether it should be subject to more exacting review. *Discovery Network*, 507 U.S. at 416 n.11, 123 L. Ed. 2d at 108 n.11, 113 S. Ct. at 1510 n.11. Here, as did the ordinance in *Discovery Network*, the sign ordinance selectively and categorically discriminates, without regard to the accuracy or nature of the message. Accordingly, heightened scrutiny would be proper.

■ Having determined that the sign ordinance reaches noncommercial expression, we must decide whether it is content-based or content-neutral, and then apply the proper level of scrutiny. *City of Ladue v. Gilleo*, 512 U.S. 43, 59, 129 L. Ed. 2d 36, 50, 114 S. Ct. 2038, 2047 (1994) (O'Connor, J., concurring). "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based. [Citations.] By contrast, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are in most instances content neutral." *Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 643, 129 L. Ed. 2d 497, 518, 114 S. Ct. 2445, 2459 (1994).

■ Here, although Schaumburg justifies the sign ordinance as a content-neutral "effort to control visual clutter, preserve aesthetics and prevent traffic problems," sections 155.11.02(4)(B) and 155.11.03(5)(B) facially discriminate between official and corporate flags and all others. Because the permissibility of a flag is dependent upon the nature of the message conveyed, the sign ordinance must be deemed content-based. See *Regan v. Time, Inc.*, 468 U.S. 641, 648, 82 L. Ed. 2d 487, 494, 104 S. Ct. 3262, 3267 (1984).

■ A content-based restriction on noncommercial expression must be "necessary to serve a compelling state interest." *Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 74 L. Ed. 2d 794, 804, 103 S. Ct. 948, 955 (1983). Traffic safety and visual aesthetics are not the sort of compelling state interest required to justify a content-based restriction on expression. *Dimmitt*, 985 F.2d at 1570.

■ We recognize that Schaumburg has a legitimate interest in regulating the physical characteristics of flag displays. In reasoning we find applicable to flags, the United States Supreme Court stated: "While signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." *City of Ladue*, 512 U.S at 48, 129 L. Ed. 2d at 42-43, 114 S. Ct. at 2041. Regulation of signs, however, is permissible only within reasonable bounds and absent censorial purpose. *City of Ladue*, 512 U.S. at 48, 129 L. Ed. 2d at 43, 114 S. Ct. at 2041. Here, although Schaumburg may legitimately regulate the physical characteristics of flags, it demonstrates an impermissible censorial purpose by selectively discriminating on the basis of the flags' content.

In short, because only extraordinary circumstances justify a content-based regulation on free expression, sections 155.11.02(4)(B) and 155.11.03(5)(B) of the sign ordinance do not pass constitutional muster when justified on the basis that they promote traffic safety and visual aesthetics. Accordingly, we conclude that the challenged sections of the sign ordinance are unconstitutional restrictions on free expression. Accord *Dimmitt*, 985 F.2d at 1569.

Schaumburg contends that because it has not been given a hearing in which to assert its interests, the circuit court was premature in dismissing its claim under section 2—619 of the Civil Practice Law (735 ILCS 5/2—619(a)(9) (West 1992)). Schaumburg argues that there are genuine issues of material fact as to the reasonableness of sections 155.11.02(4)(B) and 155.11.03(5)(B). Reasonableness, however, is not the relevant inquiry in this case. Rather, Schaumburg bears the heavy affirmative obligation of showing that the sign ordinance was necessary to serve a compelling state interest. Schaumburg's asserted interests are insufficient to meet that burden. Furthermore, because this case involves a facial challenge to the ordinance, any question of fact as to defendant's conduct is irrelevant. Accordingly, there are no issues of fact that merit an evidentiary hearing and dismissal under section 2—619 was proper. See *Purlee v. Liberty Mutual Fire Insurance Co.*, 260 Ill. App. 3d 11, 19, 631 N.E.2d 433 (1994), *appeal denied*, 157 Ill. 2d 521, 642 N.E.2d 1302 (1994) (construction of a code is a question of law appropriate for summary resolution).

## II

Having determined that sections 155.11.02(4)(B) and 155.11.03(5)(B) are impermissible, content-based restrictions on free speech and expression, we turn to the question of whether they are severable from the other provisions relating to the regulation of flags, sections 155.11.02(4)(A) and 155.11.03(5)(A). Schaumburg contends that sections 155.11.02(4)(B) and 155.11.03(5)(B) are severable because restrictions on the type of flags have nothing to do with restrictions on their number and height.

Where a court determines that an ordinance is partially invalid, it may sever the valid portions from the invalid. *Outdoor Media, Inc. v. Village of Bellwood*, 162 Ill. App. 3d 1041, 1045, 516 N.E.2d 419 (1987), *appeal denied*, 119 Ill. 2d 559, 522 N.E.2d 1247 (1988). If the portion that has not been stricken is complete and capable of being executed, it will be held valid unless it can be shown that the statute would not have been passed with the invalid portion eliminated. *Outdoor Media*, 162 Ill. App. 3d at 1045. If a court cannot say that the ordinance would have been passed with the invalid por-

tions eliminated, the entire ordinance must be invalidated. *Outdoor Media*, 162 Ill. App. 3d at 1045.

 Although sections 155.11.02(4)(A) and 155.11.03(5)(A) are complete and capable of being executed, they are not severable. Those sections regulate the display of corporate flags and official flags. If sections 155.11.02(4)(A) and 155.11.03(5)(A) are left standing alone, the effect would be to regulate corporate and official flags, but not all others. In other words, although defendant could fly at most three American flags, it could mount as many purple dinosaur flags as it wanted, of any size, and at any height, without being subject to regulation by the sign ordinance. Thus, rather than favoring corporate and official flags as the sign ordinance originally intended, a severed ordinance would discriminate against them. That result would be inconsistent with the legislative determination evinced by sections 155.11.02(4)(B) and 155.11.03(5)(B) that flags other than corporate and official flags should not be flown. Accordingly, we cannot say that sections 155.11.02(4)(A) and 155.11.03(5)(A) would have been passed with sections 155.11.02(4)(B) and 155.11.03(5)(B) eliminated. The invalid sections are not severable and sections 155.11.02(4)(A) and 155.11.03(5)(A) must be held to be invalid.

The judgment of the circuit court is affirmed.

Affirmed.

SCARIANO and BURKE, JJ., concur.