(No. 86453.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. RONNIE E. JONES, JR., Appellee.

*Opinion filed November 18, 1999.*

James E. Ryan, Attorney General, of Springfield, and Michael Kick, State's Attorney, of Kankakee (Joel D. Bertocchi, Solicitor General, William L. Browers and Russell K. Benton, Assistant Attorneys General, of Chicago, and Norbert J. Goetten, John X. Breslin and Gary F. Gnidovec, of the Office of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.

Daniel D. Yuhas, Deputy Defender, and Jacqueline L. Bullard, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

The defendant, Ronnie E. Jones, Jr., was convicted under a statute that restricts the volume at which a car stereo system may be played on a public street, but exempts vehicles engaged in advertising from this restriction. The issue presented in this appeal is whether

this statute is consistent with the first amendment to the United States Constitution. We hold that the statute is a content-based restriction on free expression which violates the first amendment.

## FACTS

In the early morning hours of October 17, 1996, the defendant was operating his automobile on a public highway. Sergeant Barry Thomas of the Kankakee County sheriff's police stopped the defendant because of the excessive noise emitting from the defendant's car radio. The defendant refused to comply with Officer Thomas' request to see the defendant's driver's license and insurance card. The officer reached through the defendant's car window to unlock the defendant's door. When a backup patrol car arrived, the defendant accelerated suddenly and drove off with Sergeant Thomas' arm still inside the car. Sergeant Thomas continued to hang on to the car as the defendant traveled 1¹/₂ miles, and reached speeds in excess of 70 miles per hour, before finally coming to a stop. Sergeant Thomas sustained bruises on his arm.

The defendant was charged in the circuit court of Kankakee County with aggravated battery of a police officer. The defendant was also charged with citations for various traffic offenses, including illegal operation of a sound amplification system (625 ILCS 5/12—611 (West 1996)). Before trial, the defendant filed a motion to dismiss the illegal sound amplification charge on the ground that it was unconstitutional. The circuit court denied the motion to dismiss.

Following a jury trial, the defendant was convicted of all charges. The defendant was sentenced to five years' incarceration for aggravated battery and was assessed court costs on all other convictions.

The defendant appealed to the appellate court, challenging his conviction for illegal sound amplification on

the ground that the statute was unconstitutional, and challenging the sentences imposed on the other convictions. The appellate court, with one justice dissenting, reversed the defendant's conviction for illegal sound amplification. 299 Ill. App. 3d 739. The appellate court majority held that the sound amplification statute violated the first amendment by regulating speech on the basis of content without a compelling state interest. The appellate court rejected the defendant's remaining contentions.

We granted the State's petition for leave to appeal as a matter of right (134 Ill. 2d R. 317) from the judgment of the appellate court holding the sound amplification statute unconstitutional. Only the defendant's conviction for illegal sound amplification is before this court. We now affirm the appellate court.

## ANALYSIS

We are asked to consider the constitutionality of section 12—611 of the Illinois Vehicle Code (625 ILCS 5/12—611 (West 1996)) (hereinafter, the sound amplification statute). The sound amplification statute provides, in its entirety, as follows:

"No driver of any motor vehicle within this State shall operate or permit operation of any sound amplification system which can be heard outside the vehicle from 75 or more feet when the vehicle is being operated upon a highway, unless such system is being operated to request assistance or warn of a hazardous situation.

This Section does not apply to authorized emergency vehicles or *vehicles engaged in advertising*.

Any violation of the provisions of this Section shall be a petty offense punishable by a fine not to exceed $50." (Emphasis added.) 625 ILCS 5/12—611 (West 1996).

The defendant urges that we affirm the appellate court's holding that this statute is a content-based restriction on free speech that violates the first amendment. In the alternative, the defendant contends that this statute

should be struck down as unconstitutionally overbroad or as violative of equal protection.

## First Amendment

The first amendment to the United States Constitution, made applicable to the states through the due process clause of the fourteenth amendment, prohibits governmental action that denies or abridges freedom of speech. U.S. Const., amends. I, XIV. There is no dispute that the sound amplification statute places restrictions on expression protected by the first amendment. The statute restricts an individual's right to audible expression in a public forum by limiting the volume of that expression. Moreover, music has been recognized as a form of expression and communication protected by the first amendment. See *Ward v. Rock Against Racism*, 491 U.S. 781, 790, 105 L. Ed. 2d 661, 674, 109 S. Ct. 2746, 2753 (1989).

### *Time, Place and Manner Regulations*

Nonetheless, it is well established that the government may, "within reasonable bounds and absent censorial purpose, regulate audible expression in its capacity as noise." *City of Ladue v. Gilleo*, 512 U.S. 43, 48, 129 L. Ed. 2d 36, 43, 114 S. Ct. 2038, 2041 (1994). The first amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired. A state may therefore impose reasonable restrictions on the time, place or manner of constitutionally protected speech occurring in a public forum. *Ward*, 491 U.S. at 791, 105 L. Ed. 2d at 675, 109 S. Ct. at 2753. A valid time, place and manner regulation, however, must be content-neutral.

A regulation is content-neutral so long as it is " 'justified without reference to the content of the regulated speech.' " *Ward*, 491 U.S. at 791, 105 L. Ed. 2d at 675, 109 S. Ct. at 2753, quoting *Clark v. Community for*

*Creative Non-Violence*, 468 U.S. 288, 293, 82 L. Ed. 2d 221, 227, 104 S. Ct. 3065, 3069 (1984). Generally, laws that confer benefits or impose burdens on speech without reference to the ideas or views expressed are content-neutral. *Turner Broadcasting System, Inc. v. Federal Communications Comm'n*, 512 U.S. 622, 643, 129 L. Ed. 2d 497, 518, 114 S. Ct. 2445, 2459 (1994). Thus, an ordinance prohibiting the posting of signs on public property was held to be content-neutral because it applied to all signs and was silent concerning any speaker's point of view. *Members of the City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804, 80 L. Ed. 2d 772, 786-87, 104 S. Ct. 2118, 2128 (1984).

A content-neutral time, place and manner regulation is subjected to what has been termed an "intermediate level of scrutiny." *Turner*, 512 U.S. at 662, 129 L. Ed. 2d at 530, 114 S. Ct. at 2469. In order to pass constitutional muster, such regulations must be narrowly tailored to serve a significant governmental interest, and must leave open ample alternative channels for communication of the information. *Ward*, 491 U.S. at 791, 105 L. Ed. 2d at 675, 109 S. Ct. at 2753; *Community for Creative Non-Violence*, 468 U.S. at 293, 82 L. Ed. 2d at 227, 104 S. Ct. at 3069.

### Content-Based Regulations

A far more stringent test is applied to a regulation that restricts speech because of its content. "At the heart of the First Amendment lies the principle that each person should decide for himself or herself the ideas and beliefs deserving of expression, consideration, and adherence." *Turner*, 512 U.S. at 641, 129 L. Ed. 2d at 517, 114 S. Ct. at 2458. For this reason, the first amendment does not generally countenance governmental control over the content of messages expressed by private individuals. *Turner*, 512 U.S. at 641, 129 L. Ed. 2d at 517, 114 S. Ct. at 2458; see also *People v. Sanders*, 182 Ill. 2d 524, 529

(1998). Regulations that restrict speech because of its content are therefore subjected to the "most exacting scrutiny." *Turner*, 512 U.S. at 642, 129 L. Ed. 2d at 517, 114 S. Ct. at 2459. Content-based regulations are presumptively invalid (*R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 120 L. Ed. 2d 305, 317, 112 S. Ct. 2538, 2542 (1992)), and will be upheld only if necessary to serve a compelling governmental interest and narrowly drawn to achieve that end (*Widmar v. Vincent*, 454 U.S. 263, 270, 70 L. Ed. 2d 440, 447-48, 102 S. Ct. 269, 274 (1981); *Sanders*, 182 Ill. 2d at 530).

Generally, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content-based. Hence, in *Carey v. Brown*, 447 U.S. 455, 462, 65 L. Ed. 2d 263, 270, 100 S. Ct. 2286, 2291 (1980), the Supreme Court held that a statute which exempted labor picketing from a prohibition on picketing was impermissibly content-based because "it is the content of the speech that determines whether it is within or without the statute's blunt prohibition."

### Application to Illinois Sound Amplification Statute

Accordingly, we must determine if the restriction on expression contained in the Illinois sound amplification statute is content-neutral or content-based. The defendant contends that the Illinois sound amplification statute is content-based on its face. The defendant premises this contention on the statute's exemption for advertising. The sound amplification statute expressly provides that it does not apply to vehicles engaged in advertising. Consequently, under the statute, the broadcast of an advertising message that can be heard at a distance of 75 feet outside a vehicle is permitted, while the broadcast of

any other message at the same volume is prohibited.[1] Thus, the defendant contends, the plain language of the statute discriminates among speakers based on the content of the speech being amplified.

In *Ward v. Rock Against Racism*, 491 U.S. 781, 105 L. Ed. 2d 661, 109 S. Ct. 2746 (1989), the Supreme Court considered whether a New York City regulation designed to control the volume of music played in a park bandshell was content-neutral for first amendment purposes. The regulation required all bandshell performers to use sound-amplification equipment and a sound technician provided by the city. The Court determined that the regulation was content-neutral because its justification, the desire to control noise levels, had " 'nothing to do with content.' " *Ward*, 491 U.S. at 792, 105 L. Ed. 2d at 676, 109 S. Ct. at 2754, quoting *Boos v. Barry*, 485 U.S. 312, 320, 99 L. Ed. 2d 333, 344, 108 S. Ct. 1157, 1163 (1988). In upholding the regulation as a valid time, place and manner regulation, the Court further noted that the regulation, by its terms, forbade enforcement that would "vary the sound quality or volume based on the message being delivered by performers." *Ward*, 491 U.S. at 794-95, 105 L. Ed. 2d at 677, 109 S. Ct. at 2755.

The Supreme Court also discussed the content-neutrality requirement for permissible "time, place or manner" regulations in *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 430, 123 L. Ed. 2d 99, 117, 113 S. Ct. 1505, 1517 (1993). In that case, the city refused to allow distribution of commercial publications through freestanding newsracks on public property, but allowed the distribution of newspapers in that manner. According to the city, its regulation was designed to limit the total

---

[1]The statute also contains an exemption for authorized emergency vehicles (625 ILCS 5/12—611 (West 1996)). The defendant does not challenge the inclusion of this exemption, and we make no comment on the constitutionality of this exemption.

number of newsracks, for reasons of safety and aesthetics. The city argued that the regulation was therefore a permissible time, place and manner restriction because the interests advanced by the regulation were not related to the content of the publications. The Court rejected this argument, ·finding the regulation to be content-based:

"The argument is unpersuasive because the very basis for the regulation is the difference in content between ordinary newspapers and commercial speech. True, there is no evidence that the city has acted with animus toward the ideas contained within respondents' publications, but just last Term we expressly rejected the argument that 'discriminatory ... treatment is suspect under the First Amendment only when the legislature intends to suppress certain ideas.' [Citation.] *** Under the city's newsrack policy, whether any particular newsrack falls within the ban is determined by the content of the publication resting inside that newsrack. Thus, by any commonsense understanding of the term, the ban in this case is 'content based.' " *Discovery Network*, 507 U.S. at 429, 123 L. Ed. 2d at 116, 113 S. Ct. at 1516-17.

Notably, in explaining content-neutrality, the Court in *Discovery Network* gave the following illustration:

"[A] prohibition against the use of sound trucks emitting 'loud and raucous' noise in residential neighborhoods is permissible *if it applies equally to music, political speech, and advertising.*" (Emphasis added.) *Discovery Network*, 507 U.S. at 428, 123 L. Ed. 2d at 116, 113 S. Ct. at 1516.

We conclude that the Illinois sound amplification statute is a content-based regulation of expression. "While surprising at first glance, the notion that a regulation of speech may be impermissibly *underinclusive* is firmly grounded in basic First Amendment principles." (Emphasis in original.) *City of Ladue v. Gilleo*, 512 U.S. 43, 51, 129 L. Ed. 2d 36, 45, 114 S. Ct. 2038, 2043 (1994). The sound amplification statute, by its plain terms, premises the permissibility of protected speech on its content. The statute's restriction does not apply equally to all types of

amplified sound. Rather, a certain type of speech, advertising, is exempted from the volume restriction. The statute thus allows the amplification of an advertising message, but prohibits the same amplification of all other messages, including religious speech, political speech and music. The permissible degree of amplification is dependent on the nature of the message being conveyed. Thus, by any "commonsense understanding of the term" (*Discovery Network*, 507 U.S. at 429, 123 L. Ed. 2d at 116, 113 S. Ct. at 1516-17), the statute's restriction is content-based.

The State argues that the statute is content-neutral because it merely regulates the volume of expression, without regard to the content of the message being expressed. As noted above, the plain language of the statute negates this assertion. Albeit only at or above a particular level of volume, the statute nonetheless expressly prohibits some speech and allows other speech based upon the nature of the message being broadcast. Thus, the State's assertion that the statute expresses no preference for one type of expression over another is simply incorrect; the statute favors advertising messages over other messages by allowing only the former to be broadcast at a particular volume.

The State also argues that the statute must be deemed content-neutral because it was not enacted with the purpose of discriminating against any particular expression. The State notes the admonition of the Supreme Court that the government's purpose is the controlling consideration in determining content neutrality. See *Turner*, 512 U.S. at 642, 129 L. Ed. 2d at 518, 114 S. Ct. at 2459; *Ward*, 491 U.S. at 791, 105 L. Ed. 2d at 675, 109 S. Ct. at 2754. According to the State, the Illinois legislature enacted the sound amplification statute to promote the legitimate governmental interests of traffic safety and noise control. Because neither of these

interests is related to the content of the message being amplified, the State contends, the statute must be considered content-neutral. We disagree.

The fundamental problem with the State's analysis in this regard is that it ignores the language of the statute. As discussed above, the sound amplification statute, on its face, discriminates based on content. Advertising messages broadcast at a particular volume are permitted while all other messages at that same volume are prohibited. The fact that the statute may have been intended to serve content-neutral goals is not dispositive. The Supreme Court has repeatedly stated that " '[i]llicit legislative intent is not the *sine qua non* of a violation of the First Amendment.' " *Simon & Schuster, Inc. v. Members of the New York State Crime Victims Board*, 502 U.S. 105, 117, 116 L. Ed. 2d 476, 488, 112 S. Ct. 501, 509 (1991), quoting *Minneapolis Star & Tribune Co. v. Minnesota Commissioner of Revenue*, 460 U.S. 575, 592, 75 L. Ed. 2d 295, 309, 103 S. Ct. 1365, 1376 (1983). Consequently, the Court has held, the mere assertion of a content-neutral purpose will not save a law "which, on its face, discriminates based on content." *Turner*, 512 U.S. at 642-43, 129 L. Ed. 2d at 518, 114 S. Ct. at 2459; see also *Discovery Network*, 507 U.S. at 429, 123 L. Ed. 2d at 116, 113 S. Ct. at 1516. We therefore reject the State's contention that the mere existence of a content-neutral purpose renders the statute content-neutral.

Accordingly, because the sound amplification statute is a content-based restriction on protected expression, it is presumptively invalid and may be upheld only if it is necessary to serve a compelling state interest and is narrowly drawn to achieve that end. *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 120 L. Ed. 2d 305, 317, 112 S. Ct. 2538, 2542 (1992); *Widmar v. Vincent*, 454 U.S. 263, 270, 70 L. Ed. 2d 440, 447-48, 102 S. Ct. 269, 274 (1981). The State confines its argument in this court to the as-

sertion that the sound amplification statute is content-neutral and does not argue that the statute serves a compelling state interest, such that it may survive strict scrutiny under the first amendment. We find no compelling state interest which necessitates the content-based restriction contained in the sound amplification statute. In arguing that the statute is a permissible content-neutral regulation, the State has asserted that the statute was enacted to promote vehicular and pedestrian traffic safety and to limit undue noise pollution. The State cites to passages from Supreme Court opinions which note that the state has a " 'substantial' " interest in " 'protecting its citizens from unwelcome noise.' " *Ward*, 491 U.S. at 796, 105 L. Ed. 2d at 678, 109 S. Ct. at 2756, quoting *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806, 80 L. Ed. 2d 772, 787, 104 S. Ct. 2118, 2129 (1984). We have no disagreement with this proposition; however, we are not persuaded that this interest rises to the level of a compelling state interest that will justify, under the first amendment, a content-based restriction on free expression. See *Village of Schaumburg v. Jeep Eagle Sales Corp.*, 285 Ill. App. 3d 481, 487 (1996). Moreover, the interests asserted by the State are in no manner served by the statute's exemption for advertising. The State provides no explanation as to why a noncommercial message broadcast at a particular volume poses a danger to the public, while an advertising message broadcast at the same volume does not.

In this regard, we note that the sound amplification statute is particularly peculiar in its valuation of protected speech. By exempting advertising messages from its volume restriction, the statute gives greater protection to commercial speech than to noncommercial speech. Commercial speech, however, has long occupied a "subordinate position *** in the scale of First Amend-

ment values." *United States v. Edge Broadcasting Co.*, 509 U.S. 418, 430, 125 L. Ed. 2d 345, 358, 113 S. Ct. 2696, 2705 (1993). Commercial speech is therefore subject to " 'modes of regulation that might be impermissible in the realm of noncommercial expression.' " *Board of Trustees of the State University v. Fox*, 492 U.S. 469, 477, 106 L. Ed. 2d 388, 402, 109 S. Ct. 3028, 3033 (1989), quoting *Ohralik v. Ohio State Bar Ass'n*, 436 U.S. 447, 456, 56 L. Ed. 2d 444, 453, 98 S. Ct. 1912, 1918 (1978). The Illinois sound amplification statute curtails noncommercial speech more severely than commercial speech and thus inverts the recognized positions of commercial and noncommercial speech in first amendment jurisprudence.

We therefore hold that the Illinois sound amplification statute is a content-based restriction on speech that violates the first amendment. Given this holding, we need not reach the defendant's claims that the statute is unconstitutionally overbroad or that it violates equal protection.

## CONCLUSION

For the foregoing reasons, the judgment of the appellate court reversing the defendant's conviction for illegal sound amplification is affirmed.

*Affirmed.*