[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 98-9347

————————————————

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
08/11/99
THOMAS K. KAHN
CLERK

D. C. Docket No. 1:97-CV-2340-WBH

GEORGIA STATE CONFERENCE OF NAACP BRANCHES,
SOUTHERN CHRISTIAN LEADERSHIP CONFERENCE, et al.,

Plaintiffs-Appellants,

versus

CATHY COX, in her representative capacity
as Secretary of State of Georgia,
GEORGIA STATE SENATE, et al.,

Defendants-Appellees.

————————————————

Appeal from the United States District Court
for the Northern District of Georgia

————————————————

(August 11, 1999)

Before BLACK and BARKETT, Circuit Judges, and GOLD*, U.S. District Judge.

BLACK, Circuit Judge:

---

* Honorable Alan S. Gold, U.S. District Judge for the Southern District of Florida, sitting by designation.

Appellants, individual citizens eligible to vote in Georgia elections, former and future candidates for state office, and organizations whose members are citizens eligible to vote in Georgia elections, brought this action against the Georgia State Senate and its presiding officer, the Georgia House of Representatives and its Speaker of the House, and the Georgia Secretary of State, contending the system by which state elections are financed in Georgia violates their rights to equal protection, freedom of expression, and freedom of association found in the United States and Georgia Constitutions, as well as their rights under the Privileges and Immunities Clause of the Georgia Constitution. The district court concluded Appellants did not have standing and dismissed their complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). We affirm.

## I. BACKGROUND

In their complaint, Appellants contend the Georgia campaign finance system excludes nonwealthy citizens from meaningful participation in the electoral process. Appellants argue that certain state laws ensure the success of wealthy candidates by exempting some campaign contributions from campaign finance limits. According to Appellants, this system prevents nonwealthy candidates from raising sufficient funds to run an effective campaign and prevents nonwealthy voters from contributing meaningfully to a candidate. Appellants contend the laws

that ensure the success of wealthy candidates are: (1) Ga. Code Ann. § 21-5-41(c), which exempts from campaign contribution limits contributions made by a candidate or a member of the candidate's immediate family to the candidate's own campaign; (2) Ga. Code Ann. § 21-5-42(c), which exempts from campaign contribution limits bona-fide loans made to a candidate or campaign committee; and (3) Ga. Code Ann. § 21-5-33(b)(1)(D), which permits, with certain restrictions, a candidate, a campaign committee, or a public officer holding elective office to carry forward funds from one campaign cycle to the next.

As a remedy, Appellants seek a declaratory judgment stating the Georgia campaign finance system violates their rights under the United States and Georgia Constitutions. Additionally, Appellants seek an order "enjoining Defendants from administering [the challenged provisions] without providing remedial measures that reduce the dominance of wealth in Georgia State Senate elections and provide an alternative public source of financing as well as meaningful contribution limits to enable non-wealthy voters and candidates to participate on an equal and meaningful basis in the state senate election process and to be heard in that process."[2]

_____

[2] In *Buckley v. Valeo*, 424 U.S. 1, 96 S. Ct. 612 (1976) (per curiam), the Supreme Court addressed many of the campaign finance provisions at issue in this case. Relevant to this case, the Court struck down limits on expenditures made independently of the candidate's campaign, limits on expenditures by a candidate from personal and family resources, and limits on the

The district court dismissed Appellants' claims for lack of standing. The court concluded Appellants lacked standing because they failed to show they suffered any cognizable injury in fact. The district court further noted a lack of causal connection between any alleged injury and any actions taken by the defendants, stating "no legislation or other state action . . . prevents a poor voter or candidate from exercising his or her rights."

## II.    DISCUSSION

We review the district court's dismissal of Appellants' claims de novo. *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir.), *cert. denied*, ___ U.S. ___, 119 S. Ct. 509 (1998).

Article III of the United States Constitution limits the power of federal courts to adjudicating actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1. This case-or-controversy doctrine fundamentally limits the power of federal courts in our system of government, *Allen v. Wright*, 468 U.S. 737, 750, 104 S. Ct. 3315, 3324 (1984), and helps to "identify those disputes which are appropriately

---

overall amount that a candidate can spend campaigning for office because the limits served no compelling governmental interest. *Id.* at 39-59; 96 S. Ct. at 644-653. The Court did, however, uphold limits on contributions made by individuals, groups, and political committees to a campaign because of the tendency of such contributions to corrupt or give the appearance of corruption. *Id.* at 23-58; 96 S. Ct. at 637-653. Appellants do not directly challenge *Buckley*, yet the gravamen of their complaint implicates the core issues addressed by that decision as explained in our discussion of the remedy sought by Appellants.

resolved through judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155, 110 S. Ct. 1717, 1722 (1990) (citation omitted).

Perhaps the most important of the Article III doctrines grounded in the case-or-controversy requirement is that of standing. *Allen,* 468 U.S. at 750, 104 S. Ct. at 3324. "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S. Ct. 2197, 2205 (1975).

To establish standing, a plaintiff must first have suffered an "injury in fact." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). The injury must be an invasion of a legally protected interest that is sufficiently concrete and particularized rather than abstract and indefinite. *Id.*; *see also FEC v. Akins*, 524 U.S. 11, __ 118 S. Ct. 1777, 1785 (1998). Second, there must be a causal connection between the injury and the challenged action of the defendant which is not too attenuated. *Lujan*, 504 U.S. at 560, 112 S. Ct. at 2136; *Allen,* 468 U.S. at 751, 104 S. Ct. at 3324. Third, it must be likely rather than speculative that "the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561, 112 S. Ct. at 2136 (citations and internal quotations omitted). In determining whether a plaintiff has established standing, we keep in mind the "Art[icle] III notion that federal courts may exercise power only in the last resort, and as a necessity" and

when the dispute is one "traditionally thought to be capable of resolution through the judicial process." *Allen,* 468 U.S. at 752, 104 S. Ct. at 3325 (citation and internal quotation omitted).

A.    Injury in Fact

Appellants claim they have suffered a cognizable injury in fact in that they, as nonwealthy voters and candidates, are excluded from meaningful participation in the electoral process.  As support for this proposition, Appellants rely principally on the white primary case of *Terry v. Adams*, 345 U.S. 461, 73 S. Ct. 809 (1953).

In *Terry*, the Supreme Court addressed the continuing efforts by white citizens, including state-sanctioned actors, to exclude blacks from exercising their right to vote.  Each spring, before the official Democratic Party Primary, the private Jaybird Democratic Association would conduct a pre-primary to endorse candidates for election, using the same process provided for by Texas state law governing primary elections, but permitting only whites to vote.   *Id.* at 469, 470-476; 73 S. Ct. at 814-816 (Frankfurter, J.).  Endorsed candidates then entered the democratic primary.  These candidates usually went unchallenged because candidates did not enter the race apart from the Jaybird primary system. *Id.* at 472, 73 S. Ct. at 814-815 (Frankfurter, J.).  As the Court noted, the official elections

6

"became no more than perfunctory ratifiers of the choice that [had] already been made [in the Jaybird primary]." *Id.* at 469, 73 S. Ct. at 813 (Black, J., announcing Judgment of the Court, joined by Douglas and Burton, JJ.). In concluding the Jaybird primary violated the Fifteenth Amendment, the Court reasoned "[t]he Jaybird primary has become an integral part, indeed the only effective part, of the elective process that determines who shall rule and govern in the county." *Id.* at 469, 73 S. Ct. at 813 (Black, J., announcing Judgment of the Court, joined by Douglas and Burton, JJ.).

Appellants' reliance on *Terry* and other ballot access cases is misplaced. Those cases require only that each voter be entitled to a single, equal vote. *See, e.g., Gray v. Sanders*, 372 U.S. 368, 380-381, 83 S. Ct. 801, 808-809 (1963) ("The idea that every voter is equal to every other voter in his State, when he casts his ballot in favor of one of several competing candidates, underlies many of our decisions. . . . The conception of political equality from the Declaration of Independence, to Lincoln's Gettysburg Address, to the Fifteenth, Seventeenth, and Nineteenth Amendments can mean only one thing--one person, one vote."); *see also Morse v. Republican Party of Va.*, 517 U.S. 186, 201-210, 116 S. Ct. 1186, 1197-1201 (1996) (Stevens, J., announcing Judgment of the Court, joined by Ginsburg, J.) (in holding political parties' delegate fee for state convention fell

7

within the preclearance requirements of the Voting Rights Act the Court stated the requirement "does not merely curtail [voters'] voting power, but abridges their right to vote itself."); *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 666-668, 86 S. Ct. 1079, 1081-1082 (1966) (invalidating state poll tax because it effectively denied the right to vote). In *Terry*, the combined actions of private and public participants violated the Constitution because "county election officials have participated in and condoned a continued effort effectively to exclude Negroes from voting." *Id.* at 476, 73 S. Ct. at 816 (Frankfurter, J.). In contrast here, no one group has conspired to exclude another group of voters from the electoral process. Additionally, no one has been denied the right to vote or equal access to the ballot. *See Albanese v. FEC*, 78 F.3d 66, 69 (2d Cir. 1996) ("Unlike the plaintiffs in *Terry*, plaintiffs here are not prevented from voting in any election.").

Appellants nevertheless contend *Terry* requires "meaningful participation" in the overall electoral process. The ballot access cases, however, do not recognize the right to equal influence in the overall electoral process. *See FEC v. Massachusetts Citizens For Life, Inc.*, 479 U.S. 238, 257, 107 S. Ct. 616, 627 (1986) ("Political 'free trade' does not necessarily require that all who participate in the political marketplace do so with exactly equal resources.") (citations

omitted); *Buckley v. Valeo*, 424 U.S. at 48-49, 96 S. Ct. at 649 ("[T]he concept that government may restrict the speech of some elements of our society in order to enhance the relative voice of others is wholly foreign to the First Amendment.") (citations omitted).

In sum, Appellants' reliance on *Terry* and the other ballot access cases is misplaced because these cases only recognize that each voter is entitled to a single, equal vote. As no one has been denied the right to vote or access to the ballot, Appellants have failed to allege any legally cognizable injury in fact.[3]

B.    Causal Connection

Appellants have also failed to establish the second prong of the standing inquiry. Appellants' alleged inability meaningfully to participate in and influence elections is attributable to the conduct and resources of private individuals, not the state. *See Jones*, 131 F.3d at 1323 (9th Cir. 1997) ("Here, there is no state action putting wealthy voters in a better position to contribute to campaigns than nonwealthy voters."). Individual voters remain free to associate and pool their resources to support the candidate of their choosing under Georgia's campaign finance system and candidates remain free to rely on their own resources, which

---

[3] In many ways, the injuries claimed by Appellants consist of the type of abstract and indefinite generalized grievance shared in substantial measure by all citizens and better suited for resolution by the political processes rather than by this Court. *See Akins*, 524 U.S. at ___, 118 S. Ct. at 1785-1786.

may include fundraising abilities, name recognition, speaking, organizational, and leadership abilities, as well as popular and easily understood positions on the issues, to be successful at the polls. The extent of voter and candidate influence is based on individual efforts, not state action.

C.   Redressability

Finally, Appellants have failed to show their alleged injury is likely to be redressed by a favorable decision. Appellants ask the district court to strike down Ga. Code Ann. §§ 21-5-41(c), -42(c), -33(b)(1)(D), which provide exemptions from or exceptions to election spending limits. The challenged provisions, however, are mandated by the Constitution. *See Buckley v. Valeo*, 424 U.S. at 54, 96 S. Ct. at 651; *see also Colorado Republican Fed. Campaign Comm. v. FEC*, 518 U.S. 604, 627, 116 S. Ct. 2309, 2321 (1996) ("The central holding in *Buckley* . . . is that spending money on one's own speech must be permitted." (citation omitted)) (Kennedy, J., joined by Rehnquist, C.J., and Scalia, J., concurring in the Judgment and dissenting in part). To invalidate these provisions would therefore render the entire scheme of spending limits unconstitutional.

Appellants additionally request that the district court enjoin Appellees from enforcing the challenged provisions without providing remedial measures, such as further spending limits or public funding of campaigns. In effect, this is a request

that the district court order the State of Georgia to enact legislation either to bar private conduct that would otherwise be permissible or to provide a benefit that is not required by law.

### III.   CONCLUSION

As Appellants have failed to satisfy the three prongs of the standing inquiry, we conclude the district court properly dismissed Appellants' complaint on the ground that they lacked standing.[4]

AFFIRMED.

---

[4] Appellants also assert their claims under the Georgia Constitution.  Appellants allege the Georgia Constitution provides them with broader protections than the United States Constitution.  However, Appellants have not alleged any injury fairly traceable to state action, nor have they provided any support for their position that the Georgia Constitution restricts the type of private action we have here.  We therefore affirm the dismissal of Appellant's state Constitutional claims.