[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 28, 2001
THOMAS K. KAHN
CLERK

No. 00-14140

D. C. Docket No. 98-00770 CV-ORL-19A

FLORIDA RIGHT TO LIFE, INC.,

Plaintiff-Appellant,

versus

LAWSON LAMAR, in his official capacity
as a Florida State Attorney,
VALERIE CROTTY, in her official capacity
as a member of the Florida Elections Commission, et al.,

Defendants-Appellees,

FLORIDA RIGHT TO LIFE POLITICAL ACTION COMMITTEE,

Plaintiff.

Appeal from the United States District Court
for the Middle District of Florida

**(November 28, 2001)**

Before BIRCH, COX and ALARCON[*], Circuit Judges.

BIRCH, Circuit Judge:

Florida Right to Life Committee, Inc., ("FRL")[1] appeals from the district court's final judgment upholding § 106.08(5), Florida Statutes, a campaign finance provision that precludes political candidates from making financial contributions to certain organizations. The district court ruled that the provision was constitutional on its face under the First and Fourteenth Amendments because of its susceptibility to a narrowing construction. We REVERSE.

## I. BACKGROUND

FRL is a non-profit Florida corporation that has as its primary purpose the dissemination of information concerning fetal development, abortion, alternatives to abortion, euthanasia, and infanticide. To raise funds for its endeavors, FRL desired to obtain contributions from candidates for public office in Florida. Candidates, however, refrained from contributing because of concern over the application of § 106.08(5), Florida Statutes, which provides in part that "[c]andidates . . . may not . . . make contributions to any religious, charitable, civic, or other causes or

_____

[*]Honorable Arthur L. Alarcon, U.S. Circuit Judge for the Ninth Circuit, sitting by designation.

[1]Plaintiff Florida Right to Life Political Action Committee did not challenge the portion of § 106.08(5), Florida Statutes, at issue here and consequently is not a party to this appeal.

2

organizations established primarily for the public good."[2]

This and other problems experienced under state campaign finance laws, Chapter 106, Florida Statutes, led FRL to bring this 42 U.S.C. § 1983 action. FRL facially challenged § 106.08(5) and several additional Florida campaign finance provisions as violative of its First and Fourteenth Amendment rights of expression and association. FRL named as defendants the Florida Secretary of State, the members of the Florida Elections Commission, and the State Attorneys for all twenty of Florida's judicial circuits (collectively "Florida"), all of whom FRL sued in their official capacities.

After commencing this suit, FRL moved for partial summary judgment. The district court granted FRL's motion as to some of Florida's campaign finance provisions.[3] The district court, however, denied FRL's motion as to the ban on contributions from candidates under § 106.08(5) because the court ruled that the provision was susceptible to a narrowing construction. Following a bench trial on other issues not raised here, the district court upheld § 106.08(5) as constitutional

---

[2]Florida does not dispute that FRL is an organization established primarily for the public good under § 106.08(5).

[3]One of the provisions upon which the district court granted summary judgment in FRL's favor was § 106.011(1), which provides the definition of "political committee" under Florida campaign finance law. Florida filed an interlocutory appeal, and we affirmed the grant of summary judgment as to that provision in Florida Right to Life, Inc. v. Lamar, 238 F.3d 1288 (11th Cir. 2001). The issues raised and resolved therein do not affect the outcome of the present appeal.

"[p]ursuant to the reasoning set forth in [its summary judgment] Order." R6-161-24. Upon entry of final judgment, FRL timely commenced this appeal to challenge the district court's ruling with regard to § 106.08(5).

## II. DISCUSSION

A. <u>Justiciability</u>

Prior to determining the constitutionality of § 106.08(5), Florida Statutes, we must address threshold justiciability issues. Article III of the United States Constitution fundamentally limits the jurisdiction of federal courts to actual "cases" and "controversies." U.S. Const. art. III, § 2, cl. 1; <u>Georgia State Conf. of NAACP Branches v. Cox</u>, 183 F.3d 1259, 1262 (11th Cir. 1999). "Before rendering a decision . . . every federal court operates under an independent obligation to ensure it is presented with the kind of concrete controversy upon which its constitutional grant of authority is based . . . ." <u>Hallandale Prof'l Fire Fighters Local 2238 v. City of Hallandale</u>, 922 F.2d 756, 759 (11th Cir. 1991). To ensure that such a concrete controversy exists in the present case, we must discuss whether threshold standing and ripeness requirements have been met.

1. Standing

"Perhaps the most important of the Article III doctrines grounded in the case-or-controversy requirement is that of standing." <u>Wooden v. Bd. of Regents of the</u>

4

Univ. Sys. of Ga., 247 F.3d 1262, 1273 (11th Cir. 2001). To prove standing, a plaintiff must show "(1) that he has suffered an actual or threatened injury, (2) that the injury is fairly traceable to the challenged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable ruling." Harris v. Evans, 20 F.3d 1118, 1121 (11th Cir. 1994) (en banc).

On appeal, Florida argues that FRL has not proven an actual or threatened injury with regard to § 106.08(5). Florida contends that § 106.08(5) forbids candidates from making contributions to organizations like FRL, but it does not forbid the organizations themselves from soliciting or receiving such contributions. Florida concludes that because § 106.08(5) places prohibitions on the conduct of candidates, not the organizations, the provision only affects the rights of candidates. Therefore, in Florida's view, FRL cannot challenge § 106.08(5) unless it meets the strict requirements for third-party standing, a doctrine that in rare circumstances allows a party to premise its claim for relief on the constitutional rights of another party. Edmonson v. Leesville Concrete Co., 500 U.S. 614, 629, 111 S. Ct. 2077, 2087 (1991).

We disagree. Third-party standing is unnecessary here because FRL premises its § 1983 suit on the violation of its own constitutional rights caused by § 106.08(5). That is, FRL bases its constitutional claims on the infringement of its

own rights to expression and association under the First and Fourteenth Amendments, not on the separate and distinct constitutional rights of political candidates.[4] Thus, Florida's argument based on third-party standing is misplaced.

Furthermore, FRL has demonstrated that it is suffering actual injury caused by § 106.08(5). The record contains a letter sent to FRL by Katherine Harris, a candidate for Secretary of State of Florida at the time,[5] in which she explains that she desires to contribute to FRL but has refrained because of § 106.08(5). This letter shows that FRL is losing donations because of the provision and thus is suffering an economic injury. This injury, in turn, will be redressed if § 106.08(5) is held facially unconstitutional because candidates will no longer fear prosecution and will proceed with their donations. Accordingly, FRL has overcome the standing hurdle.

2. Ripeness

---

[4]We also note that even if FRL's claim for relief was not premised on an injury to its own constitutional rights, Florida's focus on third-party standing still would be misplaced. Florida ignores the unique situation that arises if a statute is facially challenged as overbroad under the First Amendment. See Bischoff v. Osceola County, 222 F.3d 874, 883 (11th Cir. 2000) (noting that "[t]he requirements for standing are somewhat more lenient for facial challenges to statutes on the grounds of overbreadth" in the First Amendment context). Therefore, FRL could have brought a First Amendment facial challenge to § 106.08(5) under the overbreadth doctrine even if its own constitutional rights had not been violated, as long as FRL had established that it suffered some type of injury caused by the challenged statute. Id. at 883-84.

[5]Ms. Harris subsequently was elected Secretary of State of Florida, the position in which she currently serves.

In contrast to the doctrine of standing, the doctrine of ripeness has as its primary rationale the "avoidance of premature adjudication." Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S. Ct. 1507, 1515 (1967). The test for ripeness has two components, "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149, 87 S. Ct. at 1515. In First Amendment cases, this test is less exacting. Digital Props., Inc. v. City of Plantation, 121 F.3d 586, 590 (11th Cir. 1997).

Despite the low threshold for proving ripeness in the First Amendment context, Florida argues that FRL's claim is not ripe for two reasons. First, Florida asserts that FRL's contention that candidates would make contributions to the organization absent § 106.08(5) is too speculative. Second, Florida asserts that because FRL's conduct is not directly regulated by § 106.08(5), FRL does not face enforcement action if it chooses to solicit or receive candidate contributions. It follows, according to Florida's reasoning, that FRL will not suffer any hardship if we withhold judicial consideration from its claim.

We disagree with Florida's crabbed ripeness analysis. FRL's assertion that candidates would make contributions absent § 106.08(5) is not speculative because the record substantiates it. As we have explained, the record contains a letter sent to FRL from candidate Katherine Harris in which she states that she desires to

7

contribute to FRL but has chosen against it because of § 106.08(5). There is no speculation here because the letter establishes that Florida electoral candidates would contribute to FRL absent the § 106.08(5) prohibition.[6] Indeed, the letter shows that FRL is suffering actual hardship in the form of economic loss resulting from foregone candidate contributions.

---

[6] We also note that even though there is no current election and thus no "candidates" at this time, FRL's claim is not moot. "A case is moot when events subsequent to the commencement of a lawsuit create a situation in which the court can no longer give the plaintiff meaningful relief." Jews for Jesus, Inc. v. Hillsborough County Aviation Auth., 162 F.3d 627, 629 (11th Cir. 1998). One exception to the mootness doctrine arises when a claim is "capable of repetition yet evading review." Teper v. Miller, 82 F.3d 989, 992 n.1 (11th Cir. 1996). This exception applies when two conditions are met: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." Weinstein v. Bradford, 423 U.S. 147, 149, 96 S. Ct. 347, 349 (1975) (per curiam). Election periods are too short to fully litigate the constitutionality of § 106.08(5) before a given election ends. Moreover, FRL desires to obtain candidate contributions in the future. It is likely that FRL again will lose donations from candidates who fear prosecution, especially given that the Florida Election Commission has taken action against candidates who have made charitable donations. See In re Burke, FEC No. 94-066 (on file with FEC); In re Waters, FEC No. 96-122 (on file with FEC). In addition, we have held that in cases involving disputes over election-related laws, it is appropriate to invoke the "capable of repetition yet evading review" exception. See ACLU v. The Florida Bar, 999 F.2d 1486, 1496-97 (11th Cir. 1993). Finally, we note that Golden v. Zwickler, 394 U.S. 103, 89 S. Ct. 956 (1969), does not control. Zwickler involved a campaign worker who desired to distribute anonymous campaign literature that targeted for criticism a particular congressman's voting record. Distribution of anonymous handbills, however, was prohibited by state law. Zwickler was convicted of violating the law, but his conviction was reversed on state law grounds. Prior to the next campaign, he brought an as-applied challenge to the statute and sought a declaration of its unconstitutionality. Because the particular congressman targeted by Zwickler had resigned from Congress, the Court held that the case was moot. In contrast, FRL's desire to obtain candidate contributions is not directed towards one particular candidate, and so its desire to obtain such contributions likely will recur during future election campaigns. Further, FRL has brought a facial challenge to an election-related law, and we have noted that in this context, Zwickler normally does not control. Florida Bar, 999 F.2d at 1497. We thus conclude that the present case falls within the contours of the "capable of repetition, yet evading review" exception to mootness.

Moreover, it is far from obvious whether FRL can solicit and receive candidate contributions prohibited under § 106.08(5) without itself facing the hardship of criminal and civil penalties. The language found in § 106.19(1)(a) & (2), which details the penalties for campaign law violations, is unclear on this point.[7] In any event, Florida's focus on whether § 106.08(5) directly regulates FRL is beside the point. FRL suffers an immediate injury because, as the Harris letter demonstrates, § 106.08(5) has led candidates to refrain from contributing to FRL out of fear of prosecution. This fear has credence because the Florida Election Commission has taken action against several candidates for making donations. See Burke, FEC No. 94-066; Waters, FEC No. 96-122. Thus, irrespective of whether § 106.08(5) directly regulates FRL, the record indicates that FRL suffers economic hardship because of the provision. FRL has established that its claim is ripe, and its substantive challenge can proceed.

B. Contributions by Candidates under § 106.08(5), Florida Statutes

---

[7]Section 106.19(1)(a) provides that any "person who knowingly and willfully . . . [a]ccepts a contribution in excess of the limits prescribed by s. 106.08 . . . is guilty of a misdemeanor of the first degree." Section 106.19(2) authorizes "a civil penalty equal to three times the amount involved" for violations of § 106.19(1)(a). Whether an organization like FRL is subject to these provisions is dependant on the interpretation that Florida courts give to the "excess of the limits" language contained in § 106.19(1)(a). If that language is meant to limit civil and criminal penalties to those subsections of § 106.08(5) that deal with contribution price caps, then FRL does not face liability. A contrary result is reached if the courts interpret the ban on contributions enunciated in § 106.08(5) as a "limit" on contributions for purposes of § 106.19(1)(a).

9

FRL challenges § 106.08(5), Florida Statutes, as facially unconstitutional under the First and Fourteenth Amendments. FRL argues that § 106.08(5) should be interpreted as precluding political candidates from making *any* donations to public-minded organizations out of personal *or* campaign funds, save for in the three particular circumstances enunciated in the provision. Consequently, FRL contends that the district court erred in holding that § 106.08(5) can be narrowly construed to avoid constitutional difficulties by applying the provision only to candidate contributions made in exchange for political support. Extrapolating from the district court's construction, Florida argues that § 106.08(5) should be narrowly construed as prohibiting candidates from using funds from their campaign account for personal purposes, as in making personal donations to a charity or other organization. We agree with FRL's interpretation of § 106.08(5) because it best accords with the plain language of that provision.

1.      The Plain Language of § 106.08(5)

We review de novo a district court's interpretation of a statute. Adams v. Florida Power Corp., 255 F.3d 1322, 1324 (11th Cir. 2001). Moreover, "it is axiomatic" that in interpreting a statute, "a court must begin with the plain language of the statute." United States v. Prather, 205 F.3d 1265, 1269 (11th Cir. 2000). Accordingly, we turn first to the precise wording of § 106.08(5), which states in

10

relevant part that "[c]andidates . . . may not . . . make contributions to any religious, charitable, civic or other causes or organizations established primarily for the public good." In turn, § 106.08(5) delineates three distinct exceptions to this blanket rule. First, "it is not a violation . . . to make gifts of money in lieu of flowers in memory of a deceased person." Second, a candidate may "continue membership in, or make regular donations from personal or business funds to, religious, political party, civic, or charitable groups of which the candidate is a member or to which the candidate has been a regular donor for more than 6 months." Third, "[a] candidate may purchase with campaign funds, tickets, admission to events, or advertisements from religious, civic, political party, or charitable groups."

Our reading of the plain language of § 106.08(5) leads us to conclude that the provision creates a general rule forbidding political candidates from making any donations out of personal or campaign funds to the organizations referenced therein. This blanket restriction on donations is then diluted somewhat by the three distinct exceptions. A wide range of donative options, however, remain forbidden to candidates. Section 106.08(5) precludes a candidate from placing money in a church offering plate when she visits for the first time. It precludes a candidate from contributing to a charity she has just discovered. Indeed, it precludes a candidate from almost all spontaneous acts of charitable giving. Thus, § 106.08(5)

11

sweeps broadly to curtail the donative impulses of candidates and, conversely, to curtail the ability of many organizations to solicit and receive candidate donations. As such, the provision is on a collision course with the First Amendment.

2.     The District Court's Narrowing Construction of § 106.08(5)

To avoid this collision with First Amendment values, the district court narrowly construed § 106.08(5) and thus rejected FRL's facial challenge to the provision. We will uphold a state statute against a facial challenge if the statute is readily susceptible to a narrowing construction that avoids constitutional infirmities.[8] Dimmit v. City of Clearwater, 985 F.2d 1565, 1572 (11th Cir. 1993). We "will not, however, rewrite the clear terms of a statute in order to reject a facial challenge," and, as a federal court, "we must be particularly reluctant to rewrite the terms of a *state* statute." Id. Mindful of these interpretive principles, we turn to the narrowing construction imposed by the district court upon § 106.08(5).

In ruling that § 106.08(5) passed constitutional muster, the district court incorporated the reasoning contained in its prior order regarding FRL's motion for partial summary judgment. In that order, the district court had concluded that

_____

[8]We also will uphold a state statute that is facially challenged "if the statute has been limited by the courts of that state to a range of conduct that may be constitutionally restricted." Dimmit v. City of Clearwater, 985 F.2d 1565, 1572 (11th Cir. 1993). This principle has no bearing on the present case, however, because no Florida court has narrowed the scope of §106.08(5).

12

"contribution" in § 106.08(5) is subject to the definition of that term contained in § 106.011(3)(a). Section 106.011(3)(a) defines "contributions" as gifts and other distributions "made for the purpose of influencing the results of an election."[9] Having determined that § 106.08(5) can be read <u>in pari materia</u> with § 106.011(3)(a), the district court had held in its prior order that the provision "is readily susceptible to a narrowing construction that limits its reach to a contribution made in exchange for political support." R5-138-19. Based on its prior interpretation of § 106.08(5), the court ruled that the provision was constitutional. In contrast, we conclude that the plain language of § 106.08(5) will not bear the district court's narrowing construction.[10]

Because the district court relied on the definition of "contribution" contained in § 106.011(3)(a) to conclude that § 106.08(5) was susceptible to a narrowing construction, we must address the applicability of the former to the latter provision. Section 106.011(3)(a) limits the meaning of "contribution" to gifts made in order to influence election results, but § 106.011 also states that the definitions provided

---

[9]Section 106.011(3)(a) states in full that a contribution is "[a] gift, subscription, conveyance, deposit, loan, payment, or distribution of money or anything of value, including contributions in kind having an attributable monetary value in any form, made for the purpose of influencing the results of an election."

[10]Because we determine that contributions in the context of § 106.08(5) cannot be circumscribed to include only donations made for the purpose of influencing an election outcome, we do not reach the question of whether such a construction would itself render the provision unconstitutional under the First Amendment, as FRL has argued.

13

therein apply to Chapter 106 "unless the context clearly indicates otherwise."[11]  We decide that context clearly does indicate that the definition of "contribution" provided in § 106.011(3)(a) cannot be applied to the use of that term in § 106.08(5) without effectively rewriting the latter provision.

We turn first to the interpretive canon of expressio unius est exclusio alterius under which "the expression of one thing implies the exclusion of another." Federal Reserve Bank of Atlanta v. Thomas, 220 F.3d 1235, 1238 (11th Cir. 2000). Under this canon, the three exceptions expressed in § 106.08(5) for certain "gifts of money" and "donations" made by candidates imply the exclusion of other possible types of donations from that list of exceptions.  Yet, if the definition of "contribution" contained in § 106.011(3)(a) applies to § 106.08(5), the latter provision necessarily would contain a blanket exception for all donations that are made for altruistic purposes rather than for the purpose of influencing election results.  Such a blanket exception would fly in the face of the three explicit exceptions articulated in § 106.08(5), which under the expressio unius canon imply the exclusion of all other possible exceptions.

It is also telling that the Florida legislature chose the terms "gifts of money"

_____

[11]Florida courts have refused to apply the definition of "contribution" contained in § 106.011 to other campaign finance provisions when context militates against it.  See Ferre v. State, 478 So.2d 1077, 1081-82 (Fla. Dist. Ct. App. 1985), aff'd 494 So.2d 214 (Fla. 1986).

14

and "donations" in articulating the three exceptions to § 106.08(5). If the general rule under § 106.08(5) is that candidates cannot make contributions to certain organizations for the purpose of influencing election results, there would be no need to refer generally to "gifts of money" and "donations" in the exceptions to that rule. That is, if the definition of "contribution" in § 106.08(5) itself does not encompass ordinary gifts of money and donations, it would have been unnecessary to articulate exceptions for types of contributions that already are exempted in the first instance as a matter of definition. Otherwise the three exceptions listed in §106.08(5) thus would be entirely superfluous, and we look askance at interpretations that render statutory language devoid of purpose and effect. In re Griffith, 206 F.3d 1389, 1393 (11th Cir. 2000).

Conversely, if we read the § 106.011(3)(a) definition of "contribution" in pari materia with § 106.08(5) but interpret the three exceptions of § 106.08(5) so as not to render them superfluous, we end up with a worse result still. If "contribution" in § 106.08(5) only refers to candidate donations that are meant to influence election results, then, to avoid the superfluousness concern, we would have to construe the three exceptions as carving out a set of transfers in which a candidate *can* make donations aimed at influencing election results. That is, we would have to construe the three exceptions as creating a safe harbor for certain types of donations made to

15

influence election outcomes. For instance, we would have to read the exceptions as allowing donations made to influence election results if the donations were made to organizations in which the candidate was a member or long-time donor.

Such a reading of the three exceptions, however, makes little sense. If Florida has an interest in precluding candidates from making donations to influence election results, it would be illogical for the state to exempt donations made for such a purpose just because, for example, the candidate made the donation to an organization in which he is a member. We refuse to interpret § 106.08(5) in this manner when we can avoid this absurd result by concluding that the definition of "contribution" contained in § 106.011(3)(a) does not apply. See United States v. 6640 S.W. 48th St., 41 F.3d 1448, 1452 (11th Cir. 1995) (noting that a statute should be construed in a manner that avoids an absurd result).

For the foregoing reasons, we conclude that the meaning of "contribution" in § 106.08(5) cannot be narrowly construed as limited to the definition of that term found in § 106.011(3)(a).[12] To do so would "rewrite the clear terms" of § 106.08(5). See Dimmit, 985 F.2d at 1572. We instead interpret "contribute" more generally as meaning to give or to donate. See The Random House Dictionary 442

---

[12]Our conclusion is buttressed by the fact that in § 106.08(5) enforcement actions brought before the Florida Election Commission, the Commission itself has not limited the scope of "contribution" to include only donations made with the purpose of influencing election results. See Burke, FEC No. 94-066; Waters, FEC No. 96-122.

16

(2d ed. 1987) (defining "contribute" as "to give . . . to a common supply, fund, etc., as for charitable purposes"). Because the district court premised its interpretation on the definition of "contribution" found in § 106.011(3)(a), we conclude that the court erred in finding that § 106.08(5) was susceptible to a narrowing construction.

3.      Florida's Construction of § 106.08(5)

Building off of the district court's narrowing construction, Florida argues that § 106.08(5) should be read in view of the entire state campaign finance regime, including §§ 106.011(3)(a), 106.021(1)(b),[13] and 106.11(1).[14] Based on these provisions, Florida contends that § 106.08(5) should be narrowly construed as only prohibiting a candidate from using funds from his campaign account for personal donation to an organization. We disagree with Florida because we would have to rewrite § 106.08(5) before it could be read in this manner.[15]

We begin by noting that Florida's interpretation cannot be reconciled with the plain language of § 106.08(5). As we have explained, the provision contains

---

[13]Section 106.021(1)(b) mandates that "each candidate and each political committee shall . . . designate one primary campaign depository for the purpose of depositing all contributions received, and disbursing all expenditures made, by the candidate."

[14]Section 106.11(1) provides that a candidate's "campaign account shall be separate from any personal or other account and shall be used only for the purpose of depositing contributions and making expenditures for the candidate."

[15]Because we determine that § 106.08(5) goes beyond prohibiting a candidate from using funds from his campaign account for personal donations, we do not address whether Florida's construction of the provision would itself violate the First Amendment, as FRL has argued.

17

three exceptions, and it specifically exempts certain donations made "from personal or business funds" from its ambit. Other donations from personal or business funds, such as donations to a charity in which the candidate is a nonmember or new donor, are not included among these exceptions. Certain types of donations from personal or business funds thus remain within the scope of § 106.08(5). In turn, this shows that Florida's construction of the provision as only precluding personal donations made from campaign funds is under-inclusive.

Moreover, Florida premises its argument in part on § 106.011(3)(a), which, as we have discussed, defines "contributions" as gifts or other transfers made for the purpose of influencing the results of an election. Florida argues that this definition should be read in conjunction with the § 106.021(1)(b) requirement that each candidate create a separate campaign account and with the § 106.11(1) requirement that the account be used only for depositing contributions and making campaign expenditures. Read together, Florida contends, these provisions show that when "contribution" is used in Chapter 106, it means funds from a candidate's campaign account used in furtherance of the campaign. Consequently, Florida argues, when § 106.08(5) forbids candidates from making contributions to an organization, it should be read as precluding a candidate only from using campaign account funds to make personal donations.

We reject this line of argument. As we have explained, the definition of "contribution" in § 106.011(3)(a) does not apply to § 106.08(5). Florida's argument is premised in part on the applicability of § 106.011(3)(a), so its argument becomes unhinged when that provision is deemed inapplicable with regard to § 106.08(5). Moreover, even if the definition of "contribution" under § 106.011(3)(a) were applicable to § 106.08(5), Florida's argument–arrived at through a synthesis of several statutory provisions–still would be unpersuasive. If "contribution" in § 106.08(5) referred to candidate donations made in order to influence election results, as it must if § 106.011(3)(a) were held to apply, it would be irrelevant whether such donations came from personal or campaign account funds. The relevant consideration would be the purpose or motive behind the donation, not the particular account from which the funds were drawn. It follows that even if § 106.011(3)(a) did apply, § 106.08(5) still would proscribe candidate donations beyond Florida's proffered definition, which focuses too narrowly on the type of account used by the candidate in making her donation.

For these reasons, we reject Florida's attempt to construe narrowly § 106.08(5) as only precluding candidates from using campaign funds for the purpose of making personal donations. To do otherwise would require us to ignore our commitment, as a federal court, to be vigilant against rewriting the terms of state

19

statutes.  See Dimmit, 985 F.2d at 1572.  Florida's construction of § 106.08(5) thus fairs no better than the narrowing construction offered by the district court.

D.  The Constitutionality of § 106.08(5)

We have concluded that the plain language of § 106.08(5) creates a blanket rule forbidding political candidates from making any donations out of personal or campaign funds to an organization, unless one of the three exceptions applies. Florida concedes that if this is the proper interpretation of § 106.08(5), the provision is facially unconstitutional.  Thus, we hold that § 106.08(5) is facially unconstitutional in that it infringes upon basic First and Fourteenth Amendment rights of expression and association held by organization like FRL.[16]

### III.  CONCLUSION

In this appeal, we have concluded that § 106.08(5), Florida Statutes, cannot be narrowly construed in a manner that avoids constitutional infirmities.  As a result, we have decided that the provision is facially unconstitutional under the First and Fourteenth Amendments.  Accordingly, we REVERSE the district court's ruling that § 106.08(5) is susceptible to a narrowing construction that survives

---

[16]Because § 106.08(5) is facially unconstitutional, the entire subsection must be struck down in its entirety.  To remove one portion of § 106.08(5) while leaving the remainder of the subsection intact would constitute "interference with the state legislative process." Dimmitt, 985 F.2d at 1572.  Instead, "[t]he task of drafting a constitutionally permissible [statute] must be left to the [state]." Id.

constitutional scrutiny, and we REMAND for further proceedings consistent with this opinion.